An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

BOYD FAMILY PARTNERSHIP, A
NEVADA LIMITED PARTNERSHIP,
Appellant/Cross-Respondent,
vs.
JOHN A. RITTER, AN INDIVIDUAL;
HIDDEN RIDGE, LLC, A NEVADA
LIMITED LIABILITY COMPANY; AND
JV PROPERTIES, LLC, A NEVADA
LIMITED LIABILITY COMPANY,
Respondents/Cross-Appellants.

No. 61434

**FILED**

SEP 2 4 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

Appeal and cross-appeal from a final judgment in a contract action. Eighth Judicial District Court, Clark County; Susan Scann, Judge.

### FACTS AND PROCEDURAL HISTORY

The Focus Property Group family of companies, including investment entities Hidden Ridge, LLC, JV Properties, LLC, Victor Vista, LLC, and NGA #2, LLC, acquired parcels of real property in Nevada and California. Builder's Capital arranged the financing for each Focus project by procuring investments from multiple investors. The Boyd Family Partnership[1] invested in multiple Focus projects, including Hidden Ridge #1, Hidden Ridge #2, JV Properties, Victor Vista, and NGA #2. John

---

[1]Bradley Boyd is the general partner of the Boyd Family Partnership. This order uses "Boyd" to refer to both the individual and the entity.

14-31818

Ritter, as CEO of the Focus Property Group, executed personal guarantees for these loans.[2]

Eventually, Focus was unable to pay interest on its loans. As a result, Builder's Capital and Focus entered into a three-year forbearance agreement for each loan at issue. Because Boyd had not expressly consented to the forbearance agreements, he initiated a lawsuit contesting their enforceability. As the trial date for the lawsuit approached, Boyd, Ritter, and their respective counsel agreed to extend that date to provide the parties time to work out a resolution.

During the next five months, the parties developed a system to resolve Boyd's concerns through prepackaged bankruptcy plans (prepacks). Each prepack would transfer the property securing the loan at issue to a new entity owned by the lenders in proportion to their original contribution to that loan. In exchange for this ownership interest, the lenders would release the borrowers (e.g., JV Properties and NGA #2) and guarantor (Ritter) from future liability. Each loan was to have a separate prepack, which included a term sheet that outlined the plan and an operating agreement that governed the lenders' interests after the approval of the prepack.

With the new trial date approaching, Boyd, Ritter, Builder's Capital, JV Properties, and NGA #2 entered into the Trial Continuance

---

[2]The parties filed a written stipulation that all issues raised on appeal related to the Victor Vista loan became moot when the Victor Vista prepackaged bankruptcy plan was confirmed. Accordingly, we do not further address any issues related to the Victor Vista loan.

 

Agreement (TCA). The TCA deferred trial so that the parties could continue their attempt to resolve the case through prepacks. In the TCA, the parties agreed to execute and deliver into escrow separate sets of stipulations and orders (one set for each loan) for dismissal, and agreed that the forbearance loan term sheets for each subject loan was null and void. The parties also agreed to execute joint escrow instructions, which stated that if Focus or Builder's Capital violated certain provisions of the TCA with respect to a subject loan, Boyd could terminate the TCA and immediately file the dismissal pertaining to that loan.

Additionally, the parties agreed that the prepacks for the loans at issue would be substantially similar to a previously approved prepack—the "Dairy Loan." The TCA also provided that Focus and Boyd were required to mutually agree upon any modification to a prepack before distributing it with voting ballots to the lenders for approval. If Focus sent lenders prepack documents unapproved by Boyd, then Boyd could terminate the TCA by written notice as to the related loan and immediately file that loan's respective dismissal. The TCA also required the parties to perform other actions reasonably necessary to affect the purpose and intent of the TCA. Finally, the TCA stated that the prevailing party in any action or proceeding brought in connection with a dispute related to the terms or enforcement of the TCA would be entitled to recover costs and reasonable attorney fees from the other party.

After tailoring prepacks as needed, Focus began to distribute them. Because Boyd voted against it, the NGA #2 prepack was not approved.

Boyd eventually sought deficiency judgments against the relevant Focus companies and Ritter as guarantor related to his loan

contributions. The Focus parties filed counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing, among other things. Ultimately, the district court filed an order granting Boyd a deficiency judgment with interest for each of the loans at issue. However, the district court also found that Boyd breached the TCA's implied covenant of good faith and fair dealing with respect to the NGA #2 loan because Boyd voted against that prepack. The district court then ordered Boyd to pay the attorney fees and costs associated with the NGA #2 prepack. Additionally, the district court ordered and declared Boyd's ballot cast for confirmation of the NGA #2 prepack.

On appeal, Boyd argues that the district court erred and abused its discretion by (1) finding Boyd breached the implied covenant of good faith and fair dealing, (2) ordering Boyd's ballot cast in favor of the NGA #2 prepack, and (3) awarding attorney fees and costs to respondents/cross-appellants.

## DISCUSSION

### Breach of Contract

Boyd argues that the district court erred by finding a breach of the implied covenant of good faith and fair dealing because Boyd did not violate a term or the spirit of a term found in the TCA. The Focus parties contend that Boyd intentionally engaged in unfair conduct contrary to the spirit and intent of the TCA that caused them actual harm. We do not consider either of these arguments because we conclude that Boyd breached the TCA's terms when voting against the NGA #2 prepack.

We review contract interpretation de novo. *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). When engaging in this review, we construe and enforce contracts as a whole based on their

written language. *See Rd. & Highway Builders, L.L.C. v. N. Nev. Rebar, Inc.*, 128 Nev. ___, ___, 284 P.3d 377, 380-81 (2012); *Kaldi v. Farmers Ins. Exch.*, 117 Nev. 273, 278, 21 P.3d 16, 20 (2001).

The parties executed the TCA to postpone trial for the purpose of resolving their conflict through prepacks. Each term sheet and operating agreement was to be modeled after the "Dairy Loan" prepack, and Boyd and Focus were required to mutually agree to appropriate modifications before distributing those documents to the lenders with voting ballots for prepack approval. If Focus distributed unapproved documents for a loan, Boyd could terminate the TCA and file a dismissal for that loan.

Here, the record shows that Focus complied with the TCA when distributing the NGA #2 prepack documents and voting ballots to the lenders. Boyd's failure to object to that distribution during the solicitation process indicated that those documents were preapproved pursuant to the TCA, demonstrating that Boyd and Focus agreed to resolve the NGA #2 loan through its prepack. Having reached this resolution, we conclude that Boyd was required to cast a ballot in favor of the NGA #2 prepack as an act reasonably necessary to fulfill the purpose of the TCA. We therefore conclude that by voting against the NGA #2 prepack, Boyd breached the TCA and the Focus parties were entitled to appropriate remedies.

*Specific Performance*

We review a district court's grant or refusal of specific performance for abuse of discretion. *Serpa v. Darling*, 107 Nev. 299, 304, 810 P.2d 778, 782 (1991). "[S]pecific performance is available only when: (1) the terms of the contract are definite and certain; (2) the remedy at law

Supreme Court
OF
Nevada

(O) 1947A

5

is inadequate; (3) the appellant has tendered performance; and (4) the court is willing to order [specific performance]." *Mayfield v. Koroghli*, 124 Nev. 343, 351, 184 P.3d 362, 367 (2008) (second alteration in original) (internal quotations omitted).

Specific performance requiring Boyd to cast his ballot in favor of the NGA #2 prepack was an appropriate remedy. Boyd's obligation to vote in favor of the NGA #2 prepack after approving the respective term sheet and operating agreement is sufficiently definite and certain based on Boyd's requirement to undertake acts reasonably necessary to effectuate the purpose of the TCA. Additionally, attorney fees and costs alone would be an inadequate remedy to compensate the Focus parties for their loss if the NGA #2 prepack was not approved. Further, the Focus parties tendered performance by negotiating with Boyd and ultimately distributing the NGA #2 prepack documents. Lastly, the district court was willing to exercise its discretion in favor of specific performance. Accordingly, although the district court's basis for awarding specific performance was flawed, we agree that specific performance ordering Boyd's ballot cast in favor of the NGA #2 prepack was an appropriate remedy. *See Dynamic Transit Co. v. Trans Pac. Ventures, Inc.*, 128 Nev. ___, ___ n.3, 291 P.3d 114, 117 n.3 (2012) (explaining that we will uphold a lower court's correct decision, even if it is based on the wrong reasons).

*Attorney Fees and Costs*

This court reviews a district court's award of attorney fees and costs for an abuse of discretion. *U.S. Design & Constr. Corp. v. Int'l Bhd. of Elec. Workers Local 357*, 118 Nev. 458, 462, 50 P.3d 170, 173 (2002). A district court can only award attorney fees and costs when authorized by statute, contract, or rule. *Id.* Here, the TCA expressly allows the award of

 

attorney fees and costs to the prevailing party in a dispute related to the agreement. Because the Focus parties are prevailing parties, we conclude that the district court did not abuse its discretion when awarding attorney fees and costs. Based on the foregoing, we affirm the district court's decision.[3]

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

cc:     Hon. Susan Scann, District Judge
M. Nelson Segel, Settlement Judge
Holley, Driggs, Walch, Puzey & Thompson/Las Vegas
Gregory J. Walch
Brooks Hubley LLP
Patti, Sgro & Lewis
Bogatz Law Group
Eighth District Court Clerk

---

[3]We have considered all of Boyd's remaining arguments and determine that they lack merit. We also note that respondents/cross-appellants made their arguments on cross-appeal contingent to our reversal of the district court's decision. Accordingly, because we affirm the district court's decision and given the parties' stipulation as to the Victor Vista loan, we do not consider those arguments.